Bird Chevrolet Company, Plaintiff-Appellee, *v.* Irene M. Jackson, Ex'rx of the Last Will and Testament of Homer O. Jackson, Deceased, *et al.*, Defendants-Appellants.

(No. 74-246;

Second District (2nd Division)—October 17, 1975.

Holtan & Garrity, of Freeport, for appellants.

Nack, Richardson & Nack, of Galena, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiff, Bird Chevrolet Company ("Bird"), filed suit in December, 1973, against the legal representative and heirs of the estate of Homer O. Jackson for specific performance of an agreement dated April 12, 1967. Following a bench trial the trial court in March, 1974, entered judgment directing specific performance, and requiring defendants to deliver to Bird 100 shares of Bird's corporate stock in return for $9,361.41. After defendants filed a post-trial motion the trial court amended the judgment by adding thereto interest on the principal amount at the rate of 5% from January 1, 1970, to March 1, 1974, which latter date the court stated was the date on which Bird deposited the principal amount with the clerk of the court. Defendants appeal.

The sole issue presented is whether the trial court correctly construed the April, 1967, agreement entered into by Bird and Homer O. Jackson, defendants' decedent, as to the amount payable for decedent's stocks in the event of his death. That agreement consisted of only two clauses. In the first clause the stockholder bound himself and the legal representative of his estate to sell, and Bird agreed to buy, all of Bird's stock owned by the decedent at his death and to complete the sale within 180 days of the stockholder's death. Clause two provided as follows:

"(2) The purchase price for such stock shall be ninety per cent (90%) of its book value as determined by O'Connor, Brooks, Ahrendt & Brooks, Certified Public Accountants, of Dubuque, Iowa, as of the last day of the calendar month immediately preceding the date of death of stockholder, except that where the sale of such stock is not completed, as provided for herein, within the calendar year in which the death of the stockholder occurs, the purchase price of such stock shall be ninety per cent (90%) of its book value, determined by such accountants, as of December 31st of the calendar year immediately preceding the year of stockholder's death, and in that event, and in that event only, the profits allocable to such stock for the year of death, shall be allocated to the estate of the deceased stockholder."

Mr. Jackson died on June 13, 1969, owning 100 shares of stock in the Bird Chevrolet Company. The trial court concluded that 90% of its book value as of December 31, 1968, was $16,111 ($161.11 per share). The trial court deducted therefrom the aggregate sum of $6,749.59 representing profits from Bird attributable to the 100 shares for the years 1970 and

1971,[1] which the court held were erroneously distributed to the decedent's estate, resulting in the net sum of $9,361.41. The latter is the amount of the judgment from which appeal is taken.

About a month before Mr. Jackson died, he owned 200 shares of Bird stock. At that time Jackson sold 100 of those shares to James E. Walsh, Bird's majority stockholder, at $161.11 per share. A letter dated April 18, 1969, from O'Connor, Brooks, Ahrendt & Brooks to Mr. Jackson indicates that this occurred "under a verbal agreement to sell * * * at book value less a 10% discount." That letter stated that the book value of each share was $179.01 or $161.11 when discounted by 10%.

After this suit was filed and a few weeks before trial, O'Connor, Brooks & Company, certified public accountants, wrote a letter dated January 10, 1974, to Bird's attorney in reference to this suit (Defendant's Exhibit # 2). That letter enclosed Bird's balance sheet as of December 31, 1968, and after pointing out that the book value was $467,197.54 on that date and that 2,000 shares of stock were outstanding, stated:

> "As I understand, the book value of the stock is to be reduced by 10% to 90% to determine the value of the Homer O. Jackson interest in the company as set forth in the contract for the purchase of said Homer O. Jackson stock in the event of his death.

> "The application of the reduction of the book value of the stock to 90% of the statement value reduces the overall book value to $420,477.79. Therefore, the per share value of the stock for purposes of the contract is $210.24 per share. The Jackson Estate owned 100 shares so that the total price arrived at under the terms of the agreement would be $21,024.00."

In a letter dated January 14, 1974, from Bird's Dubuque attorney to its Galena attorney (Defendant's Exhibit # 1), forwarding a copy of the accountants' letter of January 10, are the following statements:

> "Since the sale was not completed during the year of death, the estate would be entitled to a proportionate share of the income from the corporation for the year 1969 which would be $3653.92.

> * * *

> For purposes of suit, the values in the O'Connor letter would govern, and it would seem that the corporation has paid more than the 1969 earnings and should now only pay the purchase price of $21,024. Furthermore, something should be done about

---

[1] The testimony at trial that Bird's profits were distributed to the shareholders "ever since we were under Small Business" and that this "required the shareholders to file returns", indicates that Bird's stockholders had filed a Subchapter S election under the Internal Revenue Code in order to eliminate double tax on corporate income.

the three outstanding checks and it may be we should have the Company stop payment on them."

At trial, Mr. Walsh, Bird's president and majority stockholder, testified on cross-examination, in referring to the discounted book value (purchase price) of $21,024 as follows:

"This does agree with the figure concerning the book value of stock as given by O'Connor, Brooks & Co., accountants, January 10, 1974, a copy of the letter states the share value of $210.24, I would have to agree with that interpretation of the value of the stock." (Punctuation thus shown in transcript.)

When Mr. Walsh was recalled to the stand by his counsel he answered as follows, in response to a request to state again the book value on December 31, 1968:

"The total net worth of the Company was $467,197.54. We subtract 10% a reduction of 10% of the book value we arrive at a figure of $46,719.75; so the net worth of Bird Chevrolet Company on December 31, 1968 prior to distribution of profits reduced by 10% which is $46,719.75 from the figure we had leaves $420,477.79, divided by 2000, the number of shares outstanding we arrive at a figure of $210.24. That was the value of each share of stock for purposes of the contract."

■■ From the foregoing, as from the express provisions of Clause two of the written agreement, it is clear that the purchase price (90% of book value) for the 100 shares of stock owned by decedent is $21,024, and not $16,111 as the trial court found. We assume that in arriving at the lower figure for the discounted book value the court deducted from the book value the amount of distribution of earnings to the decedent or his estate after December 31, 1968, for the year 1968. However, the express provisions of the written agreement are repugnant to such reduction. The agreement expressly states that the purchase price shall be 90% of its book value as determined by the accountants as of December 31, 1968 (i.e., "calendar year immediately preceding the year of stockholder's death"). Unquestionably, that was $21,024. Nothing was stated therein concerning any reduction in that amount by any distribution of Bird's earnings for that year allocable to the stockholder. Moreover, the agreement expressly provided that in that event even "the profits allocable to such stock for the year of death (1969) shall be allocated to the estate of the deceased stockholder." The decedent's sale of 100 of his 200 shares of stock at $161.11 per share which was then represented to him as being 90% of book value is not controlling here. That sale was made under "a verbal agreement" and we cannot speculate as to all of its terms. The express written agreement of April, 1967, between Bird

and the decedent, the letters written in January, 1974, between the accountants and Bird's Dubuque attorneys, and the testimony of Mr. Walsh, Bird's majority stockholder, establish that the book value of the remaining 100 shares is $21,024.

We next consider whether the trial court properly deducted (or set off) from the discounted book value the profits distributed to the decedent's estate for the years 1970 and 1971, aggregating $6,749.51. In referring to the allocation of profits for the year of death to the estate of the deceased stockholder the agreement states that those profits were so allocable "in that event only," thus excluding profits allocable to succeeding years.

██ We therefore conclude that the trial court did not err in deducting the aggregate distribution of $6,749.51 paid the decedent's estate for the years 1970 and 1971. We find no basis in this record for the award of interest. We therefore hold that defendants are entitled to receive from Bird for the 100 shares of stock the discounted book value of $21,024, less the deduction of the $6,749.51, or a net amount of $14,274.49.

Accordingly, the judgment of the circuit court awarding specific performance is affirmed and modified so as to increase the amount payable by Bird to decedent's estate from $9,361.41 to $14,274.49, without interest.

Judgment modified and as modified affirmed.

T. MORAN and DIXON, JJ., concur.

